**JULIE PARRISH,** OSB No. 233864
jparrish@kelrun.com
**THOMAS R. RASK, III** OSB No. 934031
trask@kelrun.com
Kell, Alterman & Runstein, L.L.P.
520 SW Yamhill Street, Suite 600
Portland, OR  97204
Telephone:  503-222-3531
Fax:  503-227-2980
Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| RIGHT TO VOTE ON THE GAS TAX PAC, an Oregon political action committee; VIRGINIA HALL, an individual, MICHAEL FIRESTONE, an individual; PAUL RUMMELL, an individual; BEN ROCHE, an individual; JANE DOES, individually; and JOHN DOES, individually, <br><br> Plaintiffs, <br><br> vs. <br><br> TOBIAS READ, in his official capacity as the Secretary of State for the State of Oregon, <br><br> Defendant. | Case No.  3:26-cv-515-IM <br><br><br> **PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER** <br><br> **ORAL ARGUMENT REQUESTED** <br><br> **EMERGENCY EXPEDITED HEARING REQUESTED** |

## MOTION

Plaintiffs Right to Vote on the Gas Tax PAC ("Right to Vote"), Virgina Hall, Michael

Firestone, Paul Rummell, Ben Roche, and an unspecified number of Jane Does and an

unspecified number of John Does (collectively, "Plaintiffs") move under Federal Rule of Civil

Procedure 65(b) for a temporary restraining order enjoining Defendant Secretary of State Tobias

**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**          **Page 1**

4931-3235-0360

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

Read from leaving unpublished in the May 19, 2026 Oregon primary election voters' pamphlets Plaintiffs' Measure 120 arguments as submitted to Defendant before 5:00 p.m. on March 12, 2026.  Plaintiffs timely filed a voters' pamphlet argument for Measure 120 for which Defendant issued them a petition template.  However, the insurmountable burdens put upon Plaintiffs constructively foreclosed their opportunity to engage voters in the section of the voters' pamphlet reserved for pure political speech, putting Plaintiffs on an unequal footing with argument filers who could afford Defendant's $1,200 filing fee.  Pursuant to LR 7-1(a)(1), conferral with the opposing party is not required.  However, Plaintiffs provided advance notice to Defendant on Friday, March 13, 2026, that pending a decision by Defendant to include the 52 petition arguments orphaned by Defendant's rulemaking under Senate Bill 1599A, Plaintiffs would file this action.  A copy of this Motion will be provided to Defendant's counsel immediately upon filing.

## I.

## INTRODUCTION

Plaintiff Right to Vote on the Gas Tax PAC is a registered Oregon political action committee, PAC ID # 24575.  Right to Vote is organized by Edwin Diehl, Bruce Starr, and Jason Williams.  (See Decl. of Ed Diehl attached to Plaintiffs' Complaint).  Right to Vote was organized as a referendum committee ("Referendum 2026-302") to refer certain tax-raising provisions of House Bill 3991 (2025 First Special Session) to voters of Oregon for their approval or rejection at the next general election on November 3, 2026.  Right to Vote successfully qualified Referendum 2026-302 to the ballot and is now identified as Measure 120.

The facts at the heart of this matter are not new as this Court heard them in *Martin v. Read*, case no. 3:26-cv-433-SI, where an Opinion and Order was granted to Ms. Martin as a sole plaintiff seeking relief from burdensome regulations on pure free speech where the administrative burdens to gain entrance into the voters' pamphlet fee-free were hindered significantly by Senate Bill 1599A's compressed deadlines (less than 10 days to comply with a

**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**    **Page 2**

4931-3235-0360

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

law that generally affords 50 days), distance burdens to get original signatures returned in person to Defendant's Salem, Oregon offices, and physical limitations of Ms. Martin.  In *Martin*, this Court declined to provide relief beyond the plaintiff in part because of the burden that extending class status would cause Defendant.  *Martin* was a pre-deadline decision that Ms. Martin should be afforded relief of having her statement included in the pure speech portion of the voters' pamphlet for the May primary election on Measure 120.

Here, Plaintiffs seek post-deadline relief.  Their harm is now understood and quantifiable. The predictable constitutional harms Right to Vote understood would come to pass have in fact occurred, as described more fully in Plaintiffs' Complaint and declarations.  Eighty-eight statements were filed in the less than 10 days the filing window and time to validate petitions closed.  Thirty-five statements as it stands will be included.  Post-deadline, the universe of measure argument filers is clear, not infinite, in that there are 52 arguments that became orphaned by unclear procedures, compressed timelines, and an environment where lack of time, distance, and for some, disability, foreclosed the right to free speech and created an advantaged opportunity for those with money to access the pure speech section of the voters' pamphlet.

Oregon's voters' pamphlet statement, a staple of Oregon's political landscape since 1903 immediately after voters adopted Article IV, Section I's constitutional right to direct legislation, has been described as being the **"poor man's avenue to reach all the registered voters."** *Lafferty v. Newbery*, 200 Ore. 685, 690; 286 P.2d 589, 591 (1954).  Plaintiffs made the effort to submit a measure argument, but do not have the means at this time to pay Defendant's filing fee. What is apparent however is that the majority of filers who paid include political action committees (each, a "PAC"), which benefit from Oregon's unique $50 per tax filer (for most tax filers) dollar-for-dollar political tax credit which comes straight from Oregon's general fund. This is not a resource available to Plaintiffs for their individual measure arguments submitted by petition in lieu of fee.  For the paid filers using PAC funds the state is subsidizing their speech twice.  For Plaintiffs, their speech has been foreclosed by a burdensome process where the rules

**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**          **Page 3**

4931-3235-0360

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

were not clearly published, no meaningful notice was provided about the process on Defendant's website, they published and received an acknowledgement, and then received an approved petition template. The entire ORS 251.255(2)(a) process was illusory, and the result is that Plaintiffs have been in fact excluded from the section of the voters' pamphlet where the government imposes only reasonable time, place manner restrictions and expressly disclaims the speakers' messages in that section.

The undisputed procedural history of how Plaintiffs were put in a position to be harmed is set forth as Exhibit 1 to Plaintiffs' Complaint. Exhibit 1, Right to Vote's purely state law claim against Defendant in Marion County Circuit Court was not objected to by Defendant at a hearing held on March 10, 2026. In this action, Plaintiffs do not seek to relitigate the pure state law claims still being considered in that challenge; rather, they bring these claims based on pure federal questions of law and do so as a result of real post-deadline harms to their First and Fourteenth Amendment Rights, and harms to at least one Plaintiff under the Americans with Disabilities Act.

## II.

## LEGAL STANDARD

Plaintiffs offer a truncated recitation for the record of the prongs necessary to receive relief under FRCP 65(b). A plaintiff seeking a temporary restraining order or preliminary injunction must establish four factors: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent preliminary relief; (3) that the balance of equities tips in the plaintiff's favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). When the government is the opposing party, the third and fourth factors merge, because the equities for the State are inseparable from the public interest. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

The Ninth Circuit also applies a sliding-scale approach: a plaintiff who raises "serious questions going to the merits" and shows that the balance of hardships tips sharply in its favor

**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**      **Page 4**

4931-3235-0360

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

satisfies the first and third factors, provided the plaintiff also demonstrates a likelihood of irreparable injury. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

This standard is particularly appropriate here, where core First and Fourteenth Amendment rights and the integrity of Oregon's electoral process are at stake. The Plaintiffs have clearly raised serious questions given the post-deadline harm has occurred, and the procedural process foreclosed meaningful free speech participation regarding a matter of statewide importance.

## III.

## ARGUMENTS

**A. Plaintiffs are likely to be successful on the merits of their case.**

**1. Plaintiffs must be afforded the same rights as those who are economically privileged and physically unhindered.**

Oregon's elections have been tarnished by news headlines that erode the public trust in our elections system. Senate Bill 1599A comes at a time when Defendant has already been grappling with issues related to news stories of ineligible voters receiving ballots;[1] 800,000 inactive voters sitting unmanaged in the public voter registration files;[2] and being sued and settling a lawsuit for failure to maintain necessary voter records as required by federal law.[3]

---

[1] VanderHart, D., "Updated findings show nearly 1,260 possible noncitizens were registered in Oregon since 2021" OPB (September 23, 2024) available at https://www.opb.org/article/2024/09/23/voter-registration-noncitizen-oregon-motor-voter/.
[2] Jaquiss, N., "Oregon to purge up to 800,000 inactive voters from registration rolls" PHILOMATH NEWS (January 10, 2026) available at https://philomathnews.com/oregon-to-purge-up-to-800000-inactive-voters-from-registration-rolls/.
[3] PUBLIC INTEREST LEGAL FOUNDATION: "Lawsuit filed under Section 8 of the National Voter Registration Act against the Oregon Secretary of State for document retention failures related to the Electronic Registration Information Center (ERIC)'s 'Deceased Retraction' reports" (January 29, 2025) *available at* https://publicinterestlegal.org/cases/pilf-v-read/

**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**         **Page 5**

4931-3235-0360

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

Plaintiffs by their declarations all played a role in helping collect an historic number of signatures by petition to qualify Measure 120 to ballot for the approval or rejection of Oregon voters. It was not unreasonable then, based on their participation in the process, that they would draft argument from each of their unique vantage points urging voters to repeal the gas-tax hikes, doubled vehicle fees, and payroll-tax increase in House Bill 3991. Under the normal statutory framework, ORS 251.255(2)(a) would afford them 50 days to draft a statement and gather the signatures necessary for its inclusion in the purely free speech section of the voters' pamphlet. But whether by reason of fixed income or disability (*see*, Decl. of Virginia Hall), real world commitments like jobs and family (*see*, Decl. of Ben Roche) or just the sheer economics of a $1,200 fee to the state (see, Decl. of Michael Firestone and Decl. of Paul Rummell), Plaintiffs have been disenfranchised from participating in a statutory right that has existed for over 120 years where the sole purpose of that right was to engage in speech related to direct legislation on matters of statewide importance.[4]

Ironically, the Defendant warned the Legislature twice in writing that this exact timeline would eliminate any realistic free-speech alternative. *See* Complaint, Exhibit 1 (and reference Exhibits 14 and 18 of Complaint Exhibit 1). What Defendant issued as a cautionary warning to lawmakers is now in fact a concrete harm to Plaintiffs' rights to participate in pure political speech via a mechanism that by design would allow people without means or people with disabilities a reasonable and orderly process by which they could have their speech messages

---

[4] The Legislature in 1903 immediately passed legislation following the adoption of the initiative and referendum constitutional enactment to ensure the electorate would be educated on matters of statewide importance. *See*, "Didn't Clear Up Much – Bill for Application of Initiative and Referendum" MORNING OREGONIAN (January 21, 1903) *available at* https://oregonnews.uoregon.edu/lccn/sn83025138/1903-01-21/ed-1/seq-11/ reporting that "The bill further provides that the Secretary of State shall furnish the County Clerks, at the time he certifies the names of the candidates for state and district offices, with the numbers and names of various measures **to be voted on at the ensuing general election**…." (emphasis added) and that "The bill provides for filing pamphlets and arguments with the Secretary of State and compelling the Secretary of State to distribute these pamphlets to the County Clerks of the various counties."

**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**    **Page 6**

4931-3235-0360

**KELL, ALTERMAN & RUNSTEIN, L.L.P.**
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

heard on an equal footing with paid political speakers.  By including barriers that restricted the process by rule and in law, Defendant's administration of the voters' pamphlet has resulted in the predictable harm where paying to speak was the only means of access in less than ten days of process.  This is not an abstract constitutional dispute; actual concrete harm can be documented and Plaintiffs' Complaint at Exhibit 3 bears out that notwithstanding one "superhuman" effort by Right to Vote volunteer Joyce Furlong (see, Decl. of Joyce Furlong) and the grace of this Court for Mary Martin, the only speakers' arguments left on the cutting room floor of the voters' pamphlet production were Plaintiffs', for whom there was no reasonable way to comply with the law.

Plaintiffs' harm is even more acute when viewed through the lens of who actually paid for the paid statements.  Plaintiffs are aware that many statements were paid via political action committee funds (*see*, Decl. of Ed Diehl).  This created a situation where not only was access to the pure speech section of the voters' pamphlet pay-to-play access only, it was pay-to-play using, in part, funds garnered by paid PAC speakers whose PAC funds are generated by the luxury of contributions funded by the Oregon Political Tax Credit.  Plaintiffs who are not politicians with PACs have no means to access that tax credit opportunity to promote their speech.  This highlights an even more critical reason why the "poor man's avenue" to the voters' pamphlet pure speech section must be preserved.

2. **Plaintiffs will prevail on their First Amendment claim because an argument in a Voters' Pamphlet is core political speech.**

On the First Amendment claim, Senate Bill 1599A, ORS 251.255(2)(a), and the Secretary's March 4, 2026 Temporary Administrative Rule impose a severe and unconstitutional burden on core political speech by conditioning access to the official voters' pamphlet.

The voters' pamphlet is the statutorily mandated government-created forum in which the Secretary "shall" publish arguments for and against ballot measures.  ORS 251.285.  Submission

---

**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**          **Page 7**

4931-3235-0360

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

of an argument in the Voters' Pamphlet is quintessential core political speech entitled to the highest level of First Amendment protection. By creating and controlling this official channel for public debate on ballot measures, the State opened a limited public forum that cannot be closed to financial or logistical barriers that are anything but reasonable, This is also true for barriers created by a Plaintiff's disability, mobility, and even distance from the Secretary's office to deliver original signatures in person when the process would be hindered by regular mail delivery[5] and only an "act of God" as defined by statute would allow Defendant to accept replica copies of petition sheets. Under the *Anderson-Burdick* framework, when a restriction imposes a severe burden on the right to engage in core political speech, strict scrutiny applies and the restriction survives only if it is narrowly tailored to serve a compelling state interest. *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).

Plaintiffs' burden is undeniably severe and it is quantifiable as evidenced by the fact that only Joyce Furlong's petition qualified after an extreme amount of effort. All Plaintiffs in this case submitted measure arguments under a framework where the rules were not posted, reasonable notice was not given, and Defendant continued to provide send emails telling Plaintiffs their argument submission had been received, but then would only send the rules of engagement and timelines for compliance deadlines after accepting the submission.

The Secretary twice warned the Legislature in writing that moving the referendum to the May primary without an emergency clause and a preserved 10-business-day free-argument window would "make it more challenging … to provide Oregonians with a free alternative to

---

[5] Varlamos, V., "USPS processing changes could affect ballots and tax returns" KVAL (March 13, 2026) *available at* https://kval.com/politics/election-officials-warn-voters-to-mail-ballots-early-after-usps-changes-ron-wyden-oregon-portland-salem-federal-postal-service-delays-postmark-rural-local-community highlighting the commonly understood challenge of delayed receipt of mail from Oregon's rural communities to the urban core, which impacts vote-by-mail and reinforces the issue that 500 signatures which could be validated had to be procured, collected, and delivered in less than 10 days' time from throughout Oregon, a near impossible feat.

**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**          **Page 8**

4931-3235-0360

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

paying a $1,200 fee" and would limit "Oregonians' ability to make an informed decision about the referendum and for proponents or opponents to make their voices heard." *See* Complaint, Exhibit 1 (and reference Exhibits 14 and 18 of Complaint Exhibit 1).

On the other hand, the State's asserted interests in administrative convenience and printing deadlines cannot possibly justify the complete exclusion of the 52 orphaned submissions Defendant knew existed on March 12, 2026, because Defendant continued to issue petitions after the 5:00 p.m. deadline. Defendant's own public records request (Plaintiffs' Complaint Exhibit 3) makes clear he knew how many individuals had been harmed. Because the burden is severe and Defendant already conceded the timeline destroys any realistic alternative, Plaintiffs are highly likely to prevail on their First Amendment claim.

### 3. Plaintiffs will prevail on their Fourteenth Amendment Equal Protection claim because the $1,200 fee requirement with no reasonable alternative imposes an unconstitutional wealth barrier to participation.

By conditioning access to the official Voters' Pamphlet on payment of a $1,200 fee or the collection of 500 original validated wet-ink signatures to be delivered in person regardless of USPS mail delays or distance from Salem, with less than a ten-day window, Senate Bill 1599A and ORS 251.255(2)(a) created a wealth-based classification that denied low-income and disabled voters, and even people of modest means, equal access to the electoral process. The Supreme Court has long held that wealth cannot be used as an electoral standard absent reasonable alternative means of access. *Harper v. Virginia Bd. of Elections*, 383 U.S. 663, 666 (1966) (wealth is an impermissible electoral criterion); *Bullock v. Carter*, 405 U.S. 134 (1972) (striking down candidate filing fees that disproportionately excluded the poor); and *Lubin v. Panish*, 415 U.S. 709, 718 (1974) ("in the absence of reasonable alternative means of ballot access, a State may not, consistent with constitutional standards, require… the payment of a filing fee").

**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**     **Page 9**

4931-3235-0360
KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

The most directly analogous and persuasive authority is *Gebert v. Patterson*, 186 Cal. App. 3d 868 (1986).  In *Gebert*, the California Court of Appeals struck down a nearly identical statutory scheme that required individuals to pay printing costs to have arguments published in the official voters' pamphlet.  The *Gebert* court held that the fee violated federal and state equal protection guarantees because it conditioned participation in a limited public forum for core political speech on the ability to pay, and it emphasized that "indigents must be afforded a realistic, fee-free alternative."  *Id*. at 876.  The court expressly analogized to *Lubin* and *Bullock* and rejected any notion that wealth could serve as a barrier to publication in the voters' pamphlet.

Here, the fee operates in exactly the same unconstitutional manner as in *Gebert*. Plaintiffs cannot pay the $1,200.  The statutory "alternative" of gathering 500 signatures is wholly illusory given constraints like compressed timelines, distance, and for some, disability and mobility issues.  As discussed in the Declaration of Jason Williams attached as part of Exhibit 1 to Plaintiffs' complaint, it necessarily takes an estimated 600 raw signatures to achieve 500 validated signatures.  On average, a signature gatherer can gather between 6-8 signatures an hour.  This would have been 75 to 100 hours necessary to gather one measure argument, plus 11 hours administrative staff burden for Defendant to comply with the statutory duty to validate the petition signatures.  There was only less than 240 hours in total to comply from start to finish – draft a statement, submit for a petition, gather 600 raw signatures, deliver the originals to Salem, and have time to be validated by 5:00 p.m. on March 12, 2026.  Gathering 600 signatures in rural Oregon is also geographically complicated as – absent county fairs and published events – there is no reasonable town square, like Pioneer Square in Portland, to even find enough people to sign the petitions.  This was a physical impossibility not just for Plaintiffs with disabilities like Plaintiff Hall, but for any Plaintiff who lives in a community where there are more livestock than people – which is much of the eastern part of Oregon.  Defendant has created a wealth barrier with no realistic alternative for those who are indigent, disabled, of modest means, or who are

**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**          **Page 10**

4931-3235-0360

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

part of the rural fabric of Oregon and are geographically limited in proximity to other registered voters without expending additional money to pay for signature gathering.  This is the precise situation *Gebert* and *Lubin* condemn.

This wealth barrier is further exacerbated by the political tax credit dynamic in that it is not just people of individual wealth who received paid access to the pure free speech section of the voters' pamphlet, but "political class" wealth will be splashed on those pages, paid for by special interest organizations and political candidates who could access Oregon's political tax credit.  That means those speakers themselves did not pay – rather, their political benefactors, through PAC patronage to preferred candidates and interest organizations' state-created PACs, will take front and center in the voters' pamphlet.

Therefore, because the scheme, as applied, functions as a pure wealth test without a meaningful alternative, Plaintiffs have an extremely strong likelihood of success on this claim.

> **4. The Plaintiffs will prevail because the Defendant has violated the Americans with Disabilities Act by failing to accommodate their disability.**

Plaintiffs are also highly likely to succeed on their Third Claim for Relief under Title II of the Americans with Disabilities Act.  Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. §12132.  Implementing regulations further require public entities to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability," unless the modification would fundamentally alter the nature of the service.  28 C.F.R. § 35.130(b)(7).  The preparation, administration, and distribution of the official Oregon voters' pamphlet is plainly a "service, program, or activity" of the Secretary of State, a public entity.

**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**    **Page 11**

4931-3235-0360

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

Plaintiff Virgina Hall is a qualified individual with a disability that, by her declaration, was certified by the United States Department of Veterans Affairs as a service-connected disability.  (See, Decl. of Virginia Hall).  Her disability is manifested as a mobility issue in that she uses a scooter to move.  Upon hearing news that this Court granted relief to Mary Martin, an elderly voter with a similar disability, Plaintiff Hall took the few signatures she had obtained and drove from Astoria to Salem, only to be told after her submissions were accepted, that such relief was only available if she had an attorney and a court order.  (*Id*.).

By refusing to make any reasonable modification to its rules to accommodate Plaintiff Hall's military service-connected and documented disability, despite the obvious futility of the existing alternatives, Defendant has violated Title II of the ADA.  Plaintiffs therefore have a strong likelihood of success on this claim.

**B. Plaintiffs will suffer irreparable harm without entry of a Temporary Restraining Order.**

The facts in this matter have been clearly stated and were known generally to this Court by means of its decision in *Martin v. Read*.  Plaintiffs, by their actions to get Measure 120 to the ballot, and by their desire to participate in the electoral process, are foreclosed from doing so on the basis of the unreasonable burdens of time and procedural processes, exacerbated by wealth, geography and distance, time, and disability.  If Defendant's acceptance of almost exclusively paid speech in the pure free speech section of the voters' pamphlet – much of which was put forth by political action committees – are allowed to be the only communicative messages about Measure 120, then Plaintiffs will suffer irreparable harm because they will be totally and permanently excluded from full and fair participation in the electoral process.

The United States Supreme Court has repeatedly held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (per curiam) (constitutional violations are presumptively

**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**    **Page 12**

4931-3235-0360

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

irreparable); *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (First Amendment harms are irreparable).

The harm here is especially severe. The voters' pamphlet must be printed and mailed to voters by late April 2026, and once printed, the exclusion of Plaintiffs' voices cannot be undone. Monetary damages or post-election relief are wholly inadequate. The harm is even more urgent in that by the 61st day, March 19, Defendant will be required to produce to the 36 county clerks materials so that they can send voters' pamphlets to the printers by April 1. Without immediate injunctive relief, Plaintiffs' fundamental right to participate in the public debate over these significant tax increases will be forever lost, and Oregon voters will receive incomplete information on a referendum that directly affects their wallets. This irreparable constitutional injury strongly supports entry of a Temporary Restraining Order.

**C. Both the balance of the equities and the public interest tip sharply in Plaintiffs' favor and compel immediate entry of a Temporary Restraining Order.**

When the government is the opposing party, these two factors merge, and the State's interest is simply the public interest in enforcing its laws. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, that interest is minimal at best. Granting relief requires nothing more than allowing the Secretary to do what he already does every election cycle: publish written arguments for the Voters' Pamphlet, review them for compliance with content rules, and print them. Here, 572 labor hours are saved by the Election's Division if this Court were to order all 52 orphaned arguments to be published. Having 88 voter pamphlet statements is not unusual. The most recent referendum had nearly the same amount published with no objections by the Elections Division under then Secretary of State Dennis Richardson.[6] The administrative burden

---

[6] Measure 101 referendum on a health care tax measure, House Bill 2391 (2017) was set prospectively for a January 23, 2018 special election under Senate Bill 229 (2017) where the integrity of voter participation in submitting measure arguments afforded by ORS 251.255(2)(a) was not harmed and voters enjoyed full participation in access to the pure speech section of the voters' pamphlet.

**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**          **Page 13**

4931-3235-0360

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

of accepting additional arguments from a discrete universe of known Plaintiffs without a $1,200 fee or impossible signature requirement is negligible, and is balanced by the administrative savings of not expending 11 labor hours per petition validation for the 52 orphaned arguments.

On the other side of the scale is the permanent and irreparable silencing of Plaintiffs who cannot pay the fee and for whom the process, rules, and procedures foreclosed the possibility of exercising the fee-free path to the pure speech section of the voters' pamphlet before the Secretary's March 12 deadline. The public interest strongly favors Plaintiffs. Oregon prides itself on being the "gold standard" for accessible and transparent elections. The public has a profound interest in hearing all sides of a hotly contested referendum on major tax increases that affect every Oregonian's wallet. Suppressing the voices of the very citizens who qualified the measure (particularly low-income, disabled and rural drivers who pay more to drive and do not have access to public transportation but will pay for it through Measure 120's proposed payroll tax) undermines the integrity of the electoral process and deprives the electorate of balanced information in the statutorily mandated voters' pamphlet.

Constitutional rights and an informed electorate vastly outweigh any minimal administrative inconvenience to the Secretary. The equities and public interest therefore tip overwhelmingly in Plaintiffs' favor. Thus, a temporary restraining order and preliminary injunction should issue.

## IV.

## CONCLUSION

At a time when distrust of elections is high, Defendant has a duty to help ensure citizens are informed, have opportunity to inform others, and take public positions to reinforce the idea that Oregon elections are safe, secure, and trustworthy. Because the Defendant lacks statutory authority to waive the $1,200 fee, the Court must intervene. Thus, for the foregoing reasons, the Court should enter a temporary restraining order enjoining Defendant Secretary of State Tobias Read from leaving unpublished in the May 19, 2026 Oregon primary election voters' pamphlets

**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**    **Page 14**

4931-3235-0360

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

Plaintiffs' Measure 120 arguments as submitted to Defendant before 5:00 p.m. on March 12, 2026.

DATED this 17th day of March, 2026.

Respectfully submitted,

KELL, ALTERMAN & RUNSTEIN, L.L.P.

BY     s/ Julie Parrish
    Julie Parrish, OSB No. 233864
    jparrish@kelrun.com
    Thomas R. Rask, III, OSB No. 934031
    trask@kelrun.com
    520 SW Yamhill St., Suite 600
    Portland, OR  97204-1329
    Telephone:  (503) 222-3531
    Fax:  (503) 227-2980
    Attorneys for Plaintiffs

**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**    **Page 15**

4931-3235-0360

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980